[Cite as *State v. Kinsworthy*, 2014-Ohio-1584.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-06-053 |
| | : | O P I N I O N |
| - vs - | | 4/14/2014 |
| | : | |
| JOSEPH D. KINSWORTHY, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 2012 CR 28221

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

James S. Arnold, 9737 Loveland-Madeira Road, Loveland, Ohio 45140 and The Farrish Law Firm, Michaela M. Stagnaro, 810 Sycamore Street, 6th Floor, Cincinnati, Ohio 45202, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Joseph D. Kinsworthy, appeals from his conviction and sentence in the Warren County Court of Common Pleas for menacing by stalking and burglary.

{¶ 2} On May 25, 2012, a Warren County grand jury indicted Kinsworthy on the following four counts: (1) domestic violence, in violation of R.C. 2919.25(A); (2) menacing by

stalking, in violation of R.C. 2903.211(A)(1); (3) burglary, in violation of R.C. 2911.12(A)(2); and (4) criminal damaging, in violation of R.C. 2906.06(A)(1). These charges arose out of a series of events involving Kinsworthy and Katy Wall, Kinsworthy's former girlfriend and the mother of his son. The events took place over a period of three months in March and May 2012.

{¶ 3} Kinsworthy, an Iraq veteran who suffers from Post-Traumatic Stress Disorder (PTSD) and has a traumatic brain injury, began his relationship with Wall in June 2009. One child was born out of the relationship. Kinsworthy and Wall lived together on and off again over the years. Kinsworthy first moved into Walls' condominium in December 2009 and stayed for three to four months. On March 28, 2010, Kinsworthy committed an act of domestic violence against Wall, and he ultimately pled guilty to that offense. After this incident, Kinsworthy moved out. However, in January 2011, just a few months after the birth of their son, Kinsworthy returned and again resided with Wall. Kinsworthy stayed for approximately three months until March 2011, when the relationship once again ended. After the relationship ended, Wall had the locks changed at her condominium. Although the relationship was over, the two remained in contact for their "son's sake." In November 2011, Kinsworthy began coming around more often and the two spoke about resuming their relationship. In March 2012, Kinsworthy began staying overnight with Wall and their son.

{¶ 4} On March 24, 2012, Kinsworthy and Wall got into an argument which increased in intensity as the day progressed. When Kinsworthy left the condominium, he punched a hole in the wall and threw open the front door with such force that it also put a hole in the wall behind the door. On that same day, the two also exchanged text messages, and in one of these messages Kinsworthy threatened to kill himself.

{¶ 5} The next day, March 25, 2012, Wall and her son went to see Kinsworthy at a friend's house. Wall brought Kinsworthy's belongings with her as she decided he could no

longer stay with them at the condominium. According to Wall, when Kinsworthy saw his belongings, he became extremely angry, and began yelling and cursing at her. While Wall attempted to leave, Kinsworthy kicked the rear, side quarter panel of her car. Their son was inside the car at the time and he started screaming. Ultimately, Wall was able to leave her friend's house and return to her condominium. Later that day, the two again exchanged text messages describing the events that had taken place that day. In one message, Kinsworthy stated: "I can promise you one thing though, NO MAN is going to be happy with you as long as im [sic] still breathing[.]" After receiving this message, Wall became scared and did not feel safe to stay at her condominium. She took her son and stayed with her parents.

{¶ 6} Based on this incident, Wall filed an application for a civil protection order (CPO) against Kinsworthy. At the preliminary hearing on April 11, 2012, Kinsworthy's visitation rights were temporarily suspended until the day of the full hearing. On May 24, 2012, the court held a full hearing and a CPO was issued against Kinsworthy, protecting Wall and her son for five years.

{¶ 7} Wall also filed a police report with the Hamilton Township Police Department regarding the damage to her car that resulted from Kinsworthy kicking the side panel of the vehicle. Photographs were taken of the damage.

{¶ 8} On the morning of April 12, 2012, just one day after Kinsworthy's visitation rights were temporarily suspended, Wall discovered that someone had smashed her car's windshield. Wall reported the incident to police. When interviewed by the police, Wall stated she believed that it was Kinsworthy who had damaged the vehicle.

{¶ 9} Just days later, on April 20, 2012, Wall returned to her condominium around 3:00 p.m. and discovered someone had broken into her residence. A key had been broken off in the door's lock, the door frame was broken, and parts of the lock were on the floor. Wall contacted the Hamilton Township Police Department and reported a burglary. Two

officers, including Officer Darcy Workmen, responded to the scene. The officers entered the condominium first and discovered Wall's dog was dead. Wall then entered the residence to inspect the damage. After surveying the damage, Wall informed the officers that three pairs of sunglasses were missing, the straps of a purse had been removed, the sheets, pillow, and clothing on her bed were wet and smelled like urine, there were small drops of blood on the sheet, and jewelry given to her by Kinsworthy was missing. Other expensive jewelry had not been taken. In addition, a photograph of her son was missing and the screen of a television that she and Kinsworthy purchased had been smashed. Wall indicated to the officers that she believed it was Kinsworthy who was the perpetrator.

{¶ 10} Thereafter, Kinworthy was indicted on the above four charges. A jury trial was held in September 2012. The jury convicted Kinsworthy of criminal damaging and found him not guilty of domestic violence and second-degree burglary. The jury indicated it was hung as to the lesser-included burglary with the purpose to commit any criminal offense, a third-degree felony, and the menacing by stalking offense.

{¶ 11} A second jury trial was held as to these two offenses on March 1, 2013. After hearing the evidence, the jury found Kinsworthy guilty on both offenses. The trial court sentenced Kinsowrthy to serve nine months in prison for menacing by stalking, a fourth-degree felony and 18 months in prison for burglary, a third-degree felony. The two prison terms were ordered to be served consecutively, for a total prison term of 27 months.

{¶ 12} Kinsworthy appeals both his convictions and sentence, raising five assignments of error for our review.[1]

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING

---

1. The present appeal is limited only to the second trial and the resulting convictions for menacing by stalking and burglary. Kinsworthy did not appeal his conviction for criminal damaging.

OTHER ACTS TESTIMONY INTO EVIDENCE THUS PREJUDICING APPELLANT'S RIGHT TO A FAIR TRIAL.

{¶ 15} In his first assignment of error, Kinsworthy argues he was denied a fair trial due to the admission of improper character evidence and improper prior bad acts evidence. Kinsworthy asserts the trial court erred in admitting the testimony regarding: (1) his prior incarceration; (2) his threats to commit suicide; (3) threats he made to kill his mother, Marcia Kinsworthy, and a correctional officer; (4) his behavior of breaking Wall's possessions and punching holes in her walls during arguments; and (5) his alcohol use and alcohol-related convictions. Kinsworthy contends this evidence did not prove that he had a history of violence towards Wall, as required for a menacing by stalking conviction. Rather, he asserts that such testimony was elicited as improper character evidence to show he was an "unstable alcoholic, with a propensity for violence."

{¶ 16} The testimony Kinsworthy now challenges on appeal was provided by several witnesses, including Wall, Marcia Kinsworthy, and Kinsworthy himself.[2] No objection was ever raised as to any of the testimony in question. Generally, this court will not reverse a trial court's decision regarding the admission of evidence absent an abuse of discretion. *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 43, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 96. However, when a party fails to object to the issue now appealed, we review for plain error. Crim.R. 52(B); *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 108. An alleged error constitutes plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been different. *State v. Blankenburg,* 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 53 (12th Dist.), citing *Lang* at

---

2. In fact, Kinsworthy testified to much of the disputed evidence, including his alcohol use, his prior threats to commit suicide, threats against his mother, his prior incarceration, and that he had broken items during arguments in the past.

¶ 108. Notice of plain error is to be taken with utmost caution and should be invoked only to prevent a clear miscarriage of justice. *Id.* A finding of harmless error, however, is appropriate where there is "overwhelming evidence of guilt" or "some other indicia that the error did not contribute to the conviction." *State v. Sims,* 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 34, quoting *State v. Ferguson*, 5 Ohio St.3d 160, 166 (1983), fn. 5.

{¶ 17} Pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. Evid.R. 404(B); *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 11. Such evidence, often called "other acts" evidence, is permitted for other purposes, however, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. Evid.R. 404(B); *Hart* at ¶ 11; *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 11. In addition, other acts evidence may also be permissible where the other acts "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 13, quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975). "Evidence of other crimes may be presented when 'they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends to logically prove any element of the crime alleged.'" *State v. Waters*, 12th Dist. Butler No. CA2002-11-266, 2003-Ohio-5871, ¶ 15.

{¶ 18} Even if the evidence meets the prerequisites of Evid.R. 404(B) it may still be excluded under Evid.R. 403(A) if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. *State v. Thomas*, 12th Dist. Butler No. CA2012-11-223, 2013-Ohio-4327, ¶ 22. Logically, all evidence which the prosecutor presents is prejudicial to the defendant; it is only the evidence which unfairly

prejudices the defendant that is prohibited by Evid.R. 403(A). *Thomas* at ¶ 23. "Unfairly prejudicial evidence is that which might result in an improper basis for a jury decision." *Id.*

{¶ 19} In prosecutions for menacing by stalking, the victim's belief that the defendant will cause physical harm is an element of the offense and such belief is often intertwined with their past interactions. *Hart* at ¶ 12. Accordingly, prior acts of violence between the victim and defendant are "relevant and highly probative in establishing the victim's belief of impending serious harm," and are particularly important in proving the crime of menacing by stalking. *Id.*, quoting *State v. Skeens*, 2d Dist. Montgomery No. 17528, 1999 WL 1082658, * 4 (Dec. 3, 1999). Furthermore, this court has noted, "[o]ther acts evidence can be particularly useful in prosecutions for menacing by stalking because it can assist the jury in understanding that a defendant's otherwise innocent appearing acts, when put into the context of previous contacts he has had with the victim, may be knowing attempts to cause mental distress." *Hart* at ¶ 12.

{¶ 20} In the present case, the record indicates the state sought to prove Kinsworthy committed felony menacing by stalking. In order to prove menacing by stalking, the state was required to show that Kinsworthy, by engaging in a pattern of conduct knowingly caused Wall to believe that he would cause her physical harm or cause her mental distress. *See* R.C. 2903.211(A)(1). To elevate the offense to a fourth-degree felony, the state was required to prove there was a "history of violence" against Wall or any other person. *See* R.C. 2903.211(B)(2)(e) ("Menacing by stalking is a felony in the fourth degree if * * * the offender has a history of violence toward the victim or any other person or a history of violent acts toward the victim or any other person").

{¶ 21} The record indicates that Wall was aware Kinsworthy had threatened to kill a correctional officer and had threatened to commit suicide in the past. Accordingly, the testimony regarding Kinsworthy's frequent threats to commit suicide as well as his threats to

kill a correctional officer were relevant and probative in proving the essential elements of the menacing by stalking charge. In particular, this evidence was relevant in proving Wall believed Kinsworthy would cause her physical harm, or in the alternative, that Kinsworthy knew he caused Wall mental distress.

{¶ 22} We similarly find the trial court did not err in admitting into evidence testimony regarding Kinsworthy's 2010 domestic violence conviction and his resulting incarceration. As the state was required to prove there was a "history of violence" against Wall, the fact that Kinsworthy committed an act of domestic violence against Wall just two years prior was relevant and probative in proving an essential element of the felony offense.[3]

{¶ 23} We also find Wall's testimony that Kinsworthy had broken some of her belongings and punched holes in her wall during prior arguments relevant and probative in proving the menacing by stalking charge, namely Wall's belief of impending serious harm. This testimony also put the past interactions between Wall and Kinsworthy into context for the jury. *See Hart* at ¶ 12. Based on the foregoing, the trial court did not err, let alone committed plain error, in admitting evidence as to Kinsworthy's prior incarceration, threats of suicide, threats against a correctional officer, and prior instances where he broke items and bunched holes in the walls of Wall's condominium.

{¶ 24} We also note that this character evidence and "other acts" evidence Kinsworthy asserts the trial court erred in admitting at trial was the same evidence and testimony that he himself participated in eliciting from the witnesses. For instance, during cross-examination of Wall, defense counsel asked: "I want to direct your attention to the 2010 domestic violence incident. Do you recall being present for the sentencing at Warren County Court?" Later, he

---

3. Further, we find no error in the trial court's failure to provide the jury with a limiting instruction that the evidence could only be used to find a "history of violence" against Wall and not to prove that Kinsworthy acted in conformity with his prior bad acts. Kinsworthy did not object to the testimony and did not ask for such a limiting instruction. Therefore, he has waived all but plain error. Because we cannot say that, but for the claimed error, the outcome of the trial clearly would have been otherwise, we find no plain error.

also asked: "All right, [sic] so following his release from incarceration you drove him to that program?" In addition, defense counsel asked Wall to explain the contents of the letter in which Kinsworthy threatened to kill a correctional officer. Kinsworthy also confirmed during direct examination that he would "break things" during arguments between himself and Wall. Kinsworthy cannot, on appeal, complain that the trial court erred in permitting the admission of prejudicial testimony which he elicited from the witnesses. *See State v. Williams*, 12th Dist. Butler No. CA2006-03-067, 2007-Ohio-2699, ¶ 27.

{¶ 25} The remaining evidence Kinsworthy challenges as being improper character evidence, including evidence regarding Kinsworthy's prior threats to kill his mother, his alcohol use, and related alcohol convictions, present a different issue as arguably none of this evidence was relevant in proving either of the two offenses at the second trial. As to Kinsworthy's alcohol use, there is no indication in the record that Kinsworthy was intoxicated at the time of any of the events which gave rise to these charges. *See Morris* at ¶ 13. Although Wall and Marcia each testified he was more violent and unstable when he was under the influence of alcohol, because there was no testimony that he was intoxicated at the time of the offenses, evidence of Kinsworthy's alcohol use was not relevant in proving any of the offenses. Similarly, any prior alcohol-related convictions would also not be relevant. In addition, the fact that Kinsworthy previously threatened his mother was not relevant in proving menacing by stalking as there is no indication that the victim, Wall, was aware of this threat, and therefore it could not have contributed to Wall's belief that Kinsworthy would cause her physical harm.

{¶ 26} Although the foregoing evidence had questionable relevancy to the case at bar, a review of the record indicates Kinsworthy did not object this evidence when first introduced by the state. Moreover, Kinsworthy repeatedly participated in eliciting this same evidence. For example, after the state questioned Marcia regarding Kinsworthy's prior threats to kill her,

Kinsworthy on re-direct examination, questioned her further regarding these threats:

> Q. Did you actually believe that [Kinsworthy] was going to kill you?
>
> A. Heavens no.
>
> Q. And has Joe ever raised his hand to you or struck you or hit you?
>
> A. Never.
>
> Q. Whether [sic] he made these statements to you about killing you when were those relative to when he returned home from Iraq?
>
> A. It started probably after he came out of his coma and came home * * *[his sergeants told me] that's how they pump them up. They teach them that.

{¶ 27} On direct examination, Kinsworthy also repeatedly referred to his struggles with alcohol. For instance, counsel asked: "Since your return from active duty have you struggled with alcohol?" Kinsworthy explained:

> Yes, that's part of my disability. When I came home * * *, I had gone so untreated that I was medicating myself with alcohol and the diagnosis that the VA in the military gave me was posttraumatic stress disorder with alcohol dependence because * * * that was my medication. I'd use that to kind of get away.

Additionally, the record indicates that Kinsworthy offered the evidence of his alcohol-related convictions. During direct examination, Kinsworthy referred to a prior driving under the influence conviction that had not been previously mentioned by the state's witnesses.

{¶ 28} From this court's review of the record, it appears Kinsworthy's defense centered on his PTSD diagnosis and his resulting alcohol dependence. Kinsworthy sought to paint a picture that he often threatened those around him with violence, but that they knew these threats were empty and were just a result of his alcohol use and PTSD. In so doing, he put his character squarely at issue and repeatedly elicited testimony regarding his problems with alcohol and his prior threats of violence towards other people. It is apparent that presenting

this evidence was used to bolster his defense. Accordingly, we fail to see any prejudice that he suffered in procuring such testimony. As Kinsworthy provided much of this testimony and also participated in eliciting the same evidence from other witnesses, any error in the admission of this evidence was invited error, and he may not now take advantage of such error on appeal. *See Williams*, 2007-Ohio-2699 at ¶ 27 ("The rule of invited error prohibits a party who induces error in the trial court from taking advantage of such error on appeal").

{¶ 29} Even if this court assumed the trial court erred in admitting evidence of Kinsworthy's alcohol use, related alcohol convictions, and his threats to kill his mother, such error would be harmless. In light of the overwhelming amount of other evidence supporting his conviction for menacing by stalking, the outcome of the trial would not have been different absent this evidence. As discussed more fully below, Wall testified regarding the couple's tumultuous and often violent history towards one another. In March 2012, Kinsworthy's pattern of conduct, which included threats via text messages indicating Kinsworthy would kill Wall and destroy many of her personal belongings, along with his later conduct of damaging her vehicle, all culminated in Wall believing Kinsworthy would harm her. Furthermore, based on the history of their relationship, Kinsworthy was aware that his actions would cause her such fear or mental distress.

{¶ 30} For the reasons discussed above, Kinsworthy's first assignment of error is overruled.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE TRIAL COURT ERRED BY ALLOWING IMPROPER REBUTTAL TESTIMONY WHICH VIOLATED [KINSWORTHY'S] RIGHT TO A FAIR TRIAL.

{¶ 33} In his second assignment of error, Kinsworthy asserts the trial court erred in allowing Officer Downs to testify as a rebuttal witness for the state. Kinsworthy maintains Downs' testimony was inadmissible as his testimony constituted hearsay under Evid.R. 801,

- 11 -

and furthermore, the testimony violated Evid.R. 404(B) as impermissible character evidence.

{¶ 34} At trial, Kinsworthy called Marcia Kinsworthy, to the stand. During her testimony, Marcia testified she had been contacted by the police "a couple of times" in regards to her son. On cross-examination, the state engaged in a series of questions regarding statements Marcia made about her son to police in May 2012. The state asked whether she had told officers that Kinsworthy "had changed tremendously since returning home [from deployment] and that his temper was so short he was unable to carry on a normal life." Marcia denied making that specific statement, but testified she told the officers she wanted Kinsworthy to get help and live a normal life. The state also asked Marcia whether she had told officers that Kinsworthy was "unpredictable and very capable of causing great harm to others." Marcia denied making that statement.

{¶ 35} On rebuttal, the state attempted to refute Marcia's testimony by presenting the testimony of Officer Downs, who had been present during this conversation. Downs testified Marcia stated Kinsworthy's "temper was so short he's unable to carry on a normal life." He further testified that Marcia indicated that she was worried Kinsworthy "may harm somebody else as well or possibly kill them."

{¶ 36} As an initial matter, we note that Kinsworthy failed to object to Officer Downs' rebuttal testimony. Thus, he has waived all but plain error. *See State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 56; *Lang*, 2011-Ohio-4215 at ¶ 108.

{¶ 37} Even if this court assumed Downs' testimony was inadmissible under Evid.R. 801 and Evid.R. 404(B), we find that any error in admitting such evidence does not rise to the level of plain error. The substance of Downs' testimony, i.e. that Kinsworthy had a short temper and had been unable to resume his normal life upon returning from Iraq, had already been presented to the jury. Kinsworthy himself provided similar testimony. During direct examination, Kinsworthy testified that upon returning from Iraq he suffered from PTSD which

led to his dependence on alcohol. He further stated that he had shared his PTSD and alcohol dependence diagnosis with Wall as they often talked about how he could "get this under control and live a normal life." He also admitted he had an "anger" issue. The only new matter that was potentially damaging to Kinsworthy was Downs' testimony that Kinsworthy's mother had concerns that he may harm other people. However, the admission of such evidence was not prejudicial given the overwhelming evidence adduced at trial which supported his convictions for menacing by stalking and burglary. Accordingly, we cannot say Downs' testimony contributed to his convictions.

{¶ 38} Kinsworthy's second assignment of error is, therefore, overruled.

{¶ 39} Assignment of Error No. 3:

{¶ 40} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF [HIS] CONSTITUTIONAL RIGHTS THUS PREJUDICING [HIS] RIGHT TO A FAIR TRIAL.

{¶ 41} In his third assignment of error, Kinsworthy asserts he received ineffective assistance of trial counsel. Kinsworthy asserts his trial counsel committed an array of errors which "significantly prejudiced" him. Specifically, Kinsworthy claims counsel was ineffective in the following ways: (1) counsel failed to mention he had an alibi during opening statements; (2) in his opening statements, counsel stated, Kinsworthy "appeared guilty"; (3) counsel failed to object to certain testimony, including "other acts" evidence, rebuttal testimony of Officer Downs, Wall's testimony comparing Kinsworthy to a serial killer, and Officer Workmen and Wall's belief that he was the perpetrator of the burglary; and (4) counsel asked Wall and Kinsworthy "damaging" questions. Kinsworthy asserts the following questions were "damaging": (1) asking Kinsworthy whether he threatened to kill Wall; (2) asking Wall about the letter Kinsworthy wrote in which he threatened a correctional officer; (3) confirming there was no footprint on Wall's car door when she left her home the day of

the burglary; (4) confirming Kinsworthy threatened to damage Wall's personal property; and (5) confirming Kinsworthy tended to urinate on things when he was intoxicated. Kinsworthy contends that the culmination of all of these errors by trial counsel significantly prejudiced him.

{¶ 42} To prevail on an ineffective assistance of counsel claim, Kinsworthy must show trial counsel's performance fell below an objective standard of reasonableness and he was prejudiced as a result. *State v. Ward-Douglas*, 12th Dist. Warren No. CA2011-05-042, 2012-Ohio-4023, ¶ 96, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052 (1984); *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, ¶ 6. In order to demonstrate prejudice, Kinsworthy must establish that, but for counsel's errors, there is a reasonable probability that the result of trial would have been different; a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Burke* at ¶ 6. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *State v. Zielinski,* 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 43} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. It is not the role of the appellate court to second guess the strategic decisions of trial counsel. *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052, CA2007-04-053, 2008-Ohio-3383, ¶ 61. The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel. *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001); *State v. Murphy*, 12th Dist. Butler No. CA2009-05-128, 2009-Ohio-6745, ¶ 24. "[T]he scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *Murphy*, 2009-Ohio-6745 at ¶ 32, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶ 44} From our review of the record, many of the actions Kinsworthy now challenges as deficient performance by trial counsel related to counsel's trial strategy and the defense presented in this case. In particular, each of the alleged errors with regard to the "damaging" questions counsel asked Kinsworthy and those asked during the cross-examination of Wall fall under the ambit of trial strategy and do not establish ineffective assistance of counsel. *See Murphy*, 2009-Ohio-6745 at ¶ 32.

{¶ 45} The trial transcript indicates part of Kinsworthy's defense was that Wall fabricated the crimes to get him "in trouble." Accordingly, as stated during opening statements, even though it "appeared" Kinsworthy was the perpetrator, counsel asserted he did not commit these criminal acts. As part of this strategy, defense counsel intentionally presented evidence regarding Kinsworthy and Wall's volatile relationship. It was the defense's intent to paint Wall as a vindictive and vengeful person such that she had a motive to make it appear as though Kinsworthy damaged her vehicle on two occasions and later broke into her home. Simply because the jury chose to reject this version of the events cannot be the basis for an ineffective assistance of counsel claim. *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 25 ("The fact that trial strategy was ultimately unsuccessful * * * does not amount to ineffective assistance of counsel"). Moreover, as stated above, the decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel. *Murphy*, 91 Ohio St.3d at 524.

{¶ 46} As to trial counsel's failure to mention Kinsworthy's alibi during opening statements, there is nothing in the record which suggests that Kinsworthy suffered any prejudice as a result of the opening statement made by counsel. It is well-settled that opening statements are not evidence. *See State v. Frazier*, 73 Ohio St.3d 323, 338 (1995). In addition, it is clear from the record that trial counsel did present alibi evidence through the

testimony of both Marcia Kinsworthy and Robert Evans and referenced Kinsworthy's alibi during closing arguments. Accordingly, counsel's failure to mention the alibi during opening statements is not enough to rise to the level of ineffective assistance of counsel.

{¶ 47} Based on our resolution of the first and second assignments of error, we also do not find that counsel's failure to object to the admission of "other acts" evidence or to the admission of Officer Down's rebuttal testimony amounted to ineffective assistance of counsel. As to the remaining instances of alleged ineffective assistance of counsel, Kinsworthy has failed to offer any argument as to how he was prejudiced by the alleged errors of counsel. He fails to show how he was prejudiced by Wall's testimony comparing him to a serial killer or Officer Workmen's belief that he was the perpetrator of the burglary. In addition, the alleged errors by counsel, even when viewed cumulatively, do not show that there is a reasonable probability that, but for these alleged errors, the result of trial would have been different. Accordingly, Kinsworthy has failed to make an adequate showing of prejudice.

{¶ 48} Kinsworthy's third assignment of error is therefore overruled.

{¶ 49} Assignment of Error No. 4:

{¶ 50} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS.

{¶ 51} In his fourth assignment of error, Kinsworthy asserts that his convictions for menacing by stalking and burglary were not supported by sufficient evidence and were also against the manifest weight of the evidence.

{¶ 52} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Hoskins*, 12th Dist. Warren No. CA2013-02-013, 2013-Ohio-3580, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the

sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Hoskins* at ¶ 16. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith,* 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 53} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 30. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* In weighing the evidence, circumstantial evidence and direct evidence inherently possess the same probative value and are subjected to the same standard of proof. *State v. Williams*, 12th Dist. Butler Nos. CA91-04-060 and CA92-06-110, 1992 WL 317025, * 6 (Nov. 2, 1992), citing *Jenks* at paragraph one of the syllabus. A conviction based purely on circumstantial evidence is no less sound than a conviction based upon direct evidence. *Williams* at * 6. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide[.]'" *State v. Barnes,* 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker,* 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26.

An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Williams* at ¶ 30.

{¶ 54} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *Smith*, 2012-Ohio-4644 at ¶ 34. Accordingly, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.*

### Menacing by Stalking

{¶ 55} Kinsworthy was convicted of menacing by stalking in violation of R.C. 2903.211(A)(1) which provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1). "Mental distress" is defined, in part, by R.C. 2903.211(D)(2) as: "Any mental illness or condition that involves some temporary substantial incapacity." R.C. 2903.211(D)(2)(a). Kinsworthy challenges whether the state proved "harm" to Wall or that he caused her "mental distress." Kinsworthy also contends the state failed to prove beyond a reasonable doubt that he engaged in a "pattern of conduct." He argues the incidents the state relied upon in proving this element of the offense, namely the damage to Wall's car and the burglary, were insufficient because the state did not prove he was the person who committed these acts as no "independent evidence" was presented.

{¶ 56} In a prosecution for menacing by stalking, this court has previously held the "state need only show that a defendant knowingly caused the victim *to believe* that he would cause her mental distress or physical harm." (Emphasis sic.) *State v. Bradford*, 12th Dist. Warren No. CA2010-04-032, 2010-Ohio-6429, ¶ 23; *State v. Hart*, 12th Dist. Warren No.

- 18 -

CA2008-06-079, 2009-Ohio-997, ¶ 31. Therefore, "neither actual physical harm nor actual mental distress is required." *Id.*

{¶ 57} Upon a review of the record, the state provided substantial evidence which indicated not only did Kinsworthy knowingly cause Wall *to believe* that he would cause her mental distress or physical harm, but that he in fact caused her mental distress. In addition, the state presented significant circumstantial evidence to prove Kinsworthy engaged in a "pattern of conduct" including damaging Wall's vehicle on two occasions and burglarizing her home on April 20, 2012.

{¶ 58} The state presented evidence which showed that Kinsworthy and Wall had a tumultuous relationship and often argued with one another. Both testified that objects were often thrown and broken during these arguments. On March 24, 2012, the two were involved in a particularly intense argument that lasted much of the day. Wall testified that when Kinsworthy left her condominium, he punched a hole in the wall and opened the door with such force that it put a hole in the wall behind the door. The state also presented the text messages between Wall and Kinsworthy from that day. At one point, Kinsworthy threatened to break several of Wall's belongings, including her video game system, television, and iPad. The messages also indicated that Kinsworthy threatened to kill Wall and he also threatened to kill himself. On March 25, 2012, the two met at a friend's house. When Kinsworthy saw his belongings in the back of her car he "got really mad," and "he started cussing at [Wall]." Wall observed Kinsworthy kicking the "side quarter panel" of her car. At this time, their son was in the back seat screaming. Wall testified that it was after this event that she became scared of him.

{¶ 59} Wall testified that although she often did not take Kinsworthy's threats that he would kill her seriously, after the events of March 25, 2012, she became scared of him. Wall further testified that after seeing Kinsworthy kick her car while their son was inside, "I was

scared to death. I was afraid he was going to hurt me." The state also presented text messages between Kinsworthy and Wall from that day. In one of these messages, Kinsworthy stated: "I can promise you one thing though, NO MAN is going to be happy with you as long as im [sic] still breathing[.]" During this exchange, Wall specifically told Kinsworthy, "[I] am scared of you now."

{¶ 60} Wall further testified that the day after Kinsworthy's visitation rights with his son were temporarily suspended, following the issuance of a temporary civil protection order, she discovered the windshield of her vehicle shattered. Wall contacted the police and indicated she believed Kinsworthy broke the windshield. Although there was no direct testimony presented regarding the damage to the windshield, given the timing of the vandalism and that only Wall's vehicle was damaged, there was certainly circumstantial evidence which permitted the jury to conclude that Kinsworthy was the person who broke the windshield. There was also testimony regarding the burglary of Walls' home that occurred on April 20, 2012. Wall again testified that based on previous threats by Kinsworthy, she believed he was the perpetrator. Officer Workmen also testified that she believed, based upon the items damaged and the items that were stolen, that the "burglary seemed very personal."

{¶ 61} Based on the foregoing, the jury did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Kinsworthy's conviction for menacing by stalking. Accordingly, we find Kinsworthy's menacing by stalking conviction is not against the manifest weight of the evidence.

**Burglary**

{¶ 62} Kinsworthy was also convicted of burglary in violation of R.C. 2911.12(A)(3), which states: "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion

of the structure any criminal offense." Kinsworthy asserts the state failed to prove this offense because he presented an alibi, and furthermore that "there was no physical evidence linking him to the burglary."

{¶ 63} Once again, contrary to Kinsworthy's arguments, the state is not required to present direct evidence which links him to the crime. *See Williams*, 1992 WL 317025 at * 6. However, Kinsworthy is correct that the physical evidence presented by the state was inconclusive at best. Although Amy Dalliard, a forensic scientist with the Miami Valley Regional Crime Lab, testified that Kinsworthy's DNA evidence was found on Wall's bed sheets, given the fact that Kinsworthy often stayed at the condominium, this evidence was of little value.[4] However, the state presented significant circumstantial evidence to support his conviction.

{¶ 64} Specifically, the state presented testimony that on April 20, 2012, when Wall returned to her condominium, she noticed her door frame had been damaged, there was broken wood and parts of the door lock on the floor in her entryway, and the door was ajar. The jury heard testimony that Kinsworthy had significant experience in breaking down doors due to his experience in the army. The jury also heard testimony from Wall and Kinsworthy that he previously threatened to kill her dog and also threatened to break her video game system, televisions, and iPad. When the police arrived at the scene, they found Wall's dog, dead in the laundry room. A veterinarian that treated the dog during its life testified he believed the dog did not die of natural causes, but rather that the dog was suffocated. During the burglary, the television in Wall's bedroom, which the couple purchased together, was broken. Yet, the television in her family room was left untouched. In addition, only jewelry which Kinsworthy had given Wall was taken during the burglary. Other, more expensive

---

4. We note the record is inconsistent with regards to the spelling of Ms. Dalliard's name. At times it is spelled Dalliard, and others, it is spelled Dalliare. For ease of discussion, we will refer to her as Dalliard.

jewelry was left undisturbed.

{¶ 65} Officer Workmen explained the damage to the condominium was not typical for a burglary where the goal is to "steal." One of the items taken during the burglary was a framed picture of the couple's newborn son. In addition, "the entire condo wasn't ransacked. Most of the time if there was a TV you'd find the TV missing instead of damaged."

{¶ 66} Finally, Kinsworthy asserts the testimony regarding his alibi is sufficient to show his conviction for burglary is against the weight of the evidence. During trial, Kinsworthy presented the testimony of his friend Robert Evans. Both Evans and Kinsworthy testified that Kinsworthy was in North Carolina visiting Evans on the weekend of April 20, 2012. Both men also testified that the drive to North Carolina is approximately ten hours and that Kinsworthy arrived at approximately 10:00 p.m. on April 20, 2012. Kinsworthy testified that he left his home in Ohio at approximately 12:00 p.m. As to Kinsworthy's whereabouts the morning of April 20, 2012, a transaction log from Kinsworthy's debit card was entered into evidence. The transaction log indicated that from 8:26 a.m. to 8:43 a.m., Kinsworthy stopped at a RedBox, Kroger, and McDonalds. The next entry was at 11:59 a.m. when Kinsworthy stopped at a local bank.

{¶ 67} Although the jury could have found Evans' and Kinsworthy's testimony about Kinsworthy's whereabouts on April 20, 2012 credible, the jury was not required to do so. *See State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 107 (finding jury was permitted to reject those portions of testimony that it did not find credible). From the time he purportedly returned home after 8:43 a.m. until he went to his bank at 11:59 a.m. on April 20, 2012, Kinsworthy was unable to "account for where [he] was at all times." Although he testified he was at home preparing for his trip to North Carolina, there was no evidence presented which corroborated this testimony. Wall testified that she left home at approximately 7:00 a.m. that morning and did not return until sometime after 3:00 p.m.

Accordingly, even accepting Kinsworthy and Evans' testimony, the jury could have found Kinsworthy had enough time from 8:43 a.m. and 11:59 a.m. to commit the burglary.

{¶ 68} Based on the record, the jury did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Kinsworthy's conviction for burglary. Accordingly, we find Kinsworthy's conviction is not against the manifest weight of the evidence.

{¶ 69} As Kinsworthy's convictions for menacing by stalking and burglary were not against the manifest weight of the evidence, we necessarily conclude that his convictions were also supported by sufficient evidence. *See Smith*, 2012-Ohio-4644 at ¶ 34. Accordingly, Kinsworthy's fourth assignment of error is overruled.

{¶ 70} Assignment of Error No. 5:

{¶ 71} THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY SENTENCING APPELLANT.

{¶ 72} Kinsworthy asserts in his fifth assignment of error that the trial court committed several errors in imposing his sentence. He contends the trial court should have merged his convictions for burglary and menacing by stalking as they are allied offenses of similar import. In addition, Kinsworthy argues the trial court failed to comply with several statutory provisions in imposing an aggregate sentence of 27 months.

**Allied Offenses of Similar Import**

{¶ 73} Kinsworthy argues his convictions for menacing by stalking and burglary should have merged at sentencing because the state "relied upon [a]ppellant's 'violent' behavior towards Ms. Wall, including the burglary, in convicting him of the [m]enacing count."

{¶ 74} An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Tannreuther*, 12th Dist. Butler No. CA2013-04-062, 2014-Ohio-74, ¶ 12, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-

- 23 -

Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *Tannreuther* at ¶ 12.

{¶ 75} The Ohio Supreme Court has set forth a test to determine whether offenses are allied offenses of similar import under R.C. 2941.25.[5] *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Pursuant to the *Johnson* test, the court must first determine "whether it is possible to commit one offense *and* commit the other with the same conduct." (Emphasis sic.) *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 10, citing *Johnson* at ¶ 48. It is not necessary that the commission of one offense will always result in the commission of the other. *Id*. Rather, the question is simply whether it is possible for both offenses to be committed by the same conduct. *Id*. "If the offenses correspond to such a degree that the conduct of the defendant constituting one offense constitutes the commission of the other, then the offenses are of similar import." *State v. Snyder,* 12th Dist. Butler No. CA2011-02-018, 2011-Ohio-6346, ¶ 15, quoting *Johnson at ¶ 48.*

{¶ 76} If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by the same conduct, that is, by a single act, performed with a single state of mind. *Lane* at ¶ 11, citing *Johnson* at ¶ 49. If so, the offenses are allied offenses of similar import and must be merged. *Lane* at ¶ 11,

---

5.  {¶ a} R.C. 2941.25 provides:

> {¶ b} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> {¶ c} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

citing *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. *Lane* at ¶ 11, citing *Johnson* at ¶ 51.

{¶ 77} In the present case, Kinsworthy was convicted of menacing by stalking which states: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1). He was also convicted of burglary which provides in pertinent part: "No person by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * *with purpose to commit in the structure * * * any criminal offense." R.C. 2911.12(A)(3).

{¶ 78} Applying *Johnson* to the facts of this case, we find Kinsworthy's menacing by stalking and burglary convictions are not allied offenses of similar import because, by the very nature of these two offenses, it is not possible to commit both offenses with the same conduct. As menacing by stalking requires a *pattern of conduct* and burglary only requires that the offender trespass an occupied structure with the purpose to commit a criminal offense, a burglary alone could not be the basis for a menacing by stalking conviction. Rather, the offender must have committed a series of actions which caused another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. The offenses of burglary and menacing by stalking simply do not correspond to such a degree that Kinsworthy's conduct constitutes the commission of both offenses. *Johnson at* ¶ 48.

{¶ 79} Kinsworthy committed burglary when he forced his way into Wall's residence by breaking down the door with the intent to commit any criminal offense once inside. Therefore, once he crossed the threshold and was inside the residence, the burglary was complete. The menacing by stalking offense, however, required a *pattern of conduct.* One act, such as breaking into Wall's home, would have been insufficient to establish menacing

by stalking. Although Kinsworthy is correct that the state provided testimony regarding the burglary to further establish Kinsworthy's pattern of conduct, this is not to say that the state relied upon the same conduct to prove both the burglary and menacing by stalking offenses. Rather, the state presented numerous other instances of Kinsworthy's conduct during March and April 2012 to establish a "pattern of conduct," including Kinsworthy's prior threatening text messages, his threats to kill Wall, and his acts of punching holes in her walls, breaking various personal items, kicking her car, and breaking the windshield of her car.

{¶ 80} As menacing by stalking and burglary are not allied offenses of similar import, we find the trial court did not err by not merging the two convictions at sentencing.

### Imposition of an Aggregate 27-Month Prison Term

{¶ 81} Kinsworthy asserts the trial court abused its discretion when it imposed his sentence without considering the purposes and principles of sentencing. Furthermore, he argues the trial court erred in imposing consecutive sentences as it did not make the requisite findings under R.C. 2929.14(C)(4). Finally, Kinsworthy asserts the trial court's imposition of a prison sentence for menacing by stalking, a fourth-degree felony violated R.C. 2929.13(B)(1)(b)(i)-(iv).

{¶ 82} As an initial matter, this court once again notes that "the standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences." *State v. Crawford,* 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony sentencing decision, such as the case here, "[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." R.C. 2953.08(G)(2). However, as explicitly stated in R.C. 2953.08(G)(2), "[t]he appellate court's standard of review is not whether the sentencing court abused its discretion."

**{¶ 83}** Instead, an appellate court may take any action authorized by R.C. 2953.08(G)(2) only if the court "clearly and convincingly finds" that either (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13 division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;" or (2) "[t]hat the sentence is otherwise contrary to law." In making such a determination, it is "important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative." *Crawford* at ¶ 8, quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 21. "It does not say that the trial court judge must have clear and convincing evidence to support its findings." Quite the contrary, "it is the court of appeals that must clearly and convincingly find that the record does not support the trial court's findings." *Id.* Simply stated, the language in R.C. 2953.08(G)(2) establishes an "extremely deferential standard of review" as the restriction is on the appellate court, rather than the trial court. *Id.*

**{¶ 84}** A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly applies postrelease control, and sentences the accused within the permissible statutory range. *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 22, citing *Crawford* at ¶ 9.

**{¶ 85}** With these principles in mind, we first note the trial court properly complied with R.C. 2929.13(B) in imposing a prison term for Kinsworthy's menacing by stalking conviction. R.C. 2929.13(B)(1)(a) provides, in certain conditions, a presumption of community control for some fourth-degree felonies. R.C. 2929.13(B)(1)(a). However, where R.C. 2929.13(B)(1)(b) applies, the trial court is permitted to impose a prison sentence. R.C. 2929.13(B)(1)(b); *see also State v. Glowka*, 12th Dist. Butler No. CA2012-10-203, 2013-Ohio-3080, ¶ 18. Since Kinsworthy had previously served a prison term, the presumption did not apply and it was

within the trial court's discretion to impose a prison sentence. R.C. 2929.13(B)(1)(b)(x).

**{¶ 86}** Kinsworthy next argues that the trial court erred in imposing consecutive sentences. A sentence is contrary to law where the trial court fails to make the consecutive sentencing findings as required by R.C. 2929.14(C)(4). *State v. Marshall*, 12th Dist. Warren No. CA2013-05-042, 2013-Ohio-5092, ¶ 8.

**{¶ 87}** Pursuant to R.C. 2929.14(C), in order to impose a consecutive sentence, the trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *Lane*, 2014-Ohio-562 at ¶ 24, citing State *v. Dillon,* 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender. *Lane* at ¶ 24. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶ 88}** The trial court is not required to give reasons explaining these findings, nor is the court required to recite any "magic" or talismanic" words when imposing consecutive

sentences. *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 45. However, it must be clear from the record that the trial court actually made the required statutory findings. *Id.*

{¶ 89} Prior to sentencing Kinsworthy to consecutive sentences, the trial court noted that it had reviewed a presentence report, and numerous letters from Kinsworthy's family, as well as a victim impact statement from Wall. The trial court took notice of Kinsworthy's military experience and the fact that such experience may have exacerbated his problems with controlling his anger and alcohol, but explained to Kinsworthy that he still must be responsible for his actions. In addition, the trial court discussed the seriousness of Kinsworthy's conduct, stating: "You terrorized a young woman without any justification whatsoever" and further noted its concern for the public: "I worry about you being amongst us. You are a dangerous person. You're a violent person. You're a person that cannot completely control his anger." Finally, the trial court also noted that even though he had previously served a prison term that "didn't stop this behavior."

{¶ 90} In light of these facts, the court determined that Kinsworthy's sentences for menacing by stalking and burglary should be served consecutively. Specifically, the court stated:

> I find that there was a continuing course of conduct that you had already been to prison before you committed these crimes, that no one single sentence would adequately punish you for your behavior that was exhibited here, that it would demean the seriousness of both offenses to not impose consecutive sentences.

From the trial court's statements at the sentencing hearing, we find the trial court properly complied with the dictates of R.C. 2929.14(C)(4). Therefore, the trial court did not err in imposing consecutive sentences.

{¶ 91} We also disagree with Kinsworthy's contention that his sentence was in error

because the trial court did not consider the principles and purposes of felony sentencing under R.C. 2929.11 or weigh the seriousness and recidivism factors under R.C. 2929.12. The sentencing entry specifically states that the trial court considered "the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12." Furthermore, the record from Kinsworthy's sentencing hearing reveals the trial court considered the necessary sentencing provisions before imposing sentence. In fact, the trial court referenced the purpose of sentencing, and further noted the serious nature of Kinsworthy's offenses, his criminal history, and his repeated failure to change his behavior and "turn his life around."

{¶ 92} In light of the foregoing, we find the trial court did not err in sentencing Kinsworthy to an aggregate 27-month prison term for menacing by stalking and burglary. Kinsworthy's fifth and final assignment of error is overruled.

{¶ 93} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.