[Cite as *State v. Shepherd*, 2017-Ohio-328.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2015-11-187 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>1/30/2017 |
| - vs - | : | |
| | : | |
| JOSHUA SHEPHERD, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR14-12-1952


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant


**M. POWELL, P.J.**

{¶ 1} Defendant-appellant, Joshua Shepherd, appeals his convictions in the Butler County Court of Common Pleas for aggravated burglary and felonious assault.

{¶ 2} On October 31, 2014, an altercation occurred between Shepherd and Zachary Hursell. Hursell sustained serious facial injuries in the altercation. Based upon his involvement in the altercation, Shepherd was indicted for aggravated burglary and felonious assault. Shepherd entered pleas of not guilty to the charges and the matter proceeded to a

jury trial. At trial, the state presented the testimony of Hursell and Fairfield Police Detective Aaron Meyer. The defense presented the testimony of Shepherd and his girlfriend, Holly Rumker. The state and the defense presented vastly different versions of the altercation.

{¶ 3} Hursell testified that he and Rumker were childhood friends who remained in contact sporadically throughout their lives. According to Hursell, on the day of the altercation, Rumker contacted him by text message, inquiring where he was, what he planned to do that evening, and if he would like to "hang-out." Before Hursell responded, he noticed someone had stopped by his home while he was in the shower. Therefore, his response via text message asked: "[d]id you just stop by?" Rumker replied stating that she had, but nobody answered the door, and that she wished to see Hursell. Hursell invited Rumker to come over.

{¶ 4} Shortly after the exchange of the text messages, Hursell heard a knock on his door. When he looked outside, he observed a distraught Rumker in the middle of his porch, so he opened the front and screen doors and poked his head outside. As he did so, Shepherd struck Hursell in the side of the face. Following this initial blow, Shepherd flung open the door and pushed Hursell back into his house until they both fell backwards onto Hursell's couch where Hursell continued having "the crap beat out of [him]," as Shepherd repeatedly hit him in the face. Hursell sustained two black eyes, a dislocated nose and jaw, a lacerated forehead, a laceration around his left eye, and chipped teeth. The injuries surrounding his eye required extensive stitches and surgery.

{¶ 5} However, according to the testimony of Shepherd and Rumker, Hursell initiated the text message interactions with Rumker and started the altercation on the porch. Specifically, Shepherd and Rumker testified that the text message conversation presented as part of the state's case-in-chief was incomplete because Hursell initiated the conversation by sending a text message stating, "Happy Halloween." Further, that the conversation was the

last straw in a long and continued pattern of Hursell harassing Rumker through various forms of communication. Therefore, Shepherd and Rumker decided to confront Hursell personally and ask that he stop harassing Rumker.

{¶ 6} Thus, Shepherd and Rumker went to Hursell's home and knocked on his door. When no one answered they left. However, shortly thereafter, Rumker received a text message from Hursell inviting her over. Shepherd and Rumker returned to Hursell's home. Upon their return, Hursell answered the door and stepped all the way out onto the porch. Shepherd then asked Hursell why he continued contacting Rumker. At, which point, Rumker observed that Hursell "went for [Shepherd]," in "a fast manner" with his "[h]ands up," as if he was going to push, hit, or wrestle Shepherd. Shepherd testified that he was able to respond before Hursell got a hold of him because his "fight or flight response kick[ed] in * * * and [he] felt like he * * * needed to defend [himself]." Following the initial punch to Hursell's face, Hursell and Shepherd were close enough together that Hursell was able to grab Shepherd's coat and pull Shepherd backwards into the house onto the couch. Shepherd testified that he attempted to extricate himself from the fray, but was unable to do so because Hursell had a firm grasp of his coat. In an effort to get Hursell to release his coat, Shepherd struck Hursell five or six times while pleading with Hursell to release his coat. Once Hursell released Shepherd's coat, Shepherd and Rumker left the premises.

{¶ 7} Before the case was submitted to the jury, Shepherd requested jury instructions on self-defense and aggravated assault. The trial court instructed the jury on self-defense, but refused the instruction on aggravated assault based on a finding that the evidence was insufficient to warrant an aggravated assault instruction and that such instruction was inconsistent with Shepherd's claim of self-defense.

{¶ 8} Following deliberations, the jury returned guilty verdicts as to both charges in the indictment. At sentencing, Shepherd presented mitigation evidence that he was an

- 3 -

honorably discharged army veteran who served two combat tours in Iraq and was undergoing treatment for post-traumatic stress disorder ("PTSD") at the Veterans Affairs Medical Center ("VA"). While referring to a VA report, the trial court made note at sentencing that Shepherd's PTSD symptoms were manifested in anger and impulsivity. The trial court merged the felonious assault and aggravated burglary convictions as allied offenses of similar import. The state elected to proceed on the aggravated burglary conviction. The trial court sentenced Shepherd to a five-year prison term.

{¶ 9} Assignment of Error No. 1:

{¶ 10} SHEPHERD'S AGGRAVATED BURGLARY CONVICTION WAS UNCONSTITUTIONAL AND UNLAWFUL.

{¶ 11} Shepherd argues the state presented insufficient evidence to support the aggravated burglary charge and that his conviction of aggravated burglary is against the manifest weight of the evidence.[1]

{¶ 12} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 102 (1997). Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. *Id.*, citing *Black's Law Dictionary* (6th Ed.1990) 1433. A conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). The relevant inquiry is "whether, after

---

1. Shepherd articulates this issue as "[t]he manifest weight of the evidence established that Shepherd used force and stealth to inflict harm upon [Hursell's] person—but not to effect an entry into [Hursell's] home." We construe this as claiming the conviction for aggravated burglary is against the manifest weight of the evidence.

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 259-60 (1991), *superseded by constitutional amendment on other grounds as stated by Smith* at 102.  In evaluating the sufficiency of the evidence, this court "defer[s] to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.  "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *State v. Robinson*, 162 Ohio St. 486, 487 (1955), *superseded by constitutional amendment on other grounds as stated by Smith* at 102.

{¶ 13} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14.  In making this determination, a reviewing court looks at the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.  "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Couch*, 12th Dist. Butler No. CA2016-03-062, 2016-Ohio-8452, ¶ 8.

{¶ 14} "A reversal based on the weight of the evidence * * * can occur only after the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict." (Emphasis added.)  *Tibbs* at 42-43; *see also State v. Jones*, 12th Dist. Butler

No. CA2012-03-049, 2013-Ohio-150, ¶ 19 (stating that finding a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency). Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 15} As noted above, Shepherd was convicted of aggravated burglary, in violation of R.C. 2911.11. Pursuant to that statute,

> [n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another * * *.

{¶ 16} R.C. 2911.11(A)(1). Shepherd argues the evidence of aggravated burglary was insufficient and his conviction for aggravated burglary was against the manifest weight of the evidence because the statute requires force, stealth, or deception to gain entry to a home, while the force he used was only to assault Hursell. Thus, Shepherd claims the state failed to prove the essential element of aggravated burglary that "force, stealth, or deception" be used to gain entry to an occupied structure. Shepherd further argues the trial court's merging of his two convictions supports this proposition. However, even though two offenses may be allied offenses of similar import, that does not mean that the separate offenses were not committed, but rather, that a single act constituted the multiple offenses. *See* R.C. 2941.25.

{¶ 17} Turning to the statute, we first note the terms "force," "stealth," and "deception" are listed in the disjunctive as means to effectuate a "trespass." *See State v. Bell*, 12th Dist. Butler No. CA93-07-143, 1994 WL 29877, at *2 (Jan. 31, 1994) (stating, "[b]ecause the three words are used in the disjunctive, the state need only prove any one of them"). In this case,

Shepherd concedes the use of force against Hursell. *See* R.C. 2901.01 (defining force as "any violence, compulsion, or constraint physically exerted by any means upon or against a *person* or thing"). (Emphasis added.) Therefore, we will restrict our consideration of the issue to whether the force employed by Shepherd was the means used to trespass in Hursell's home.

{¶ 18} Further, the trespass element of aggravated burglary, necessarily incorporates R.C. 2911.21(A)(1), which defines a criminal trespass as "knowingly" entering or remaining on the land or premises of another without privilege to do so. "A person acts knowingly, *regardless of purpose*, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." (Emphasis added.) R.C. 2901.22(B). Therefore, contrary to Shepherd's claim otherwise, the requisite culpability requirement is that one act "knowingly," not "purposefully," in trespassing by force.

{¶ 19} After a thorough review of the record, we find the state presented evidence that would allow the jury to conclude beyond a reasonable doubt that Shepherd knowingly trespassed by force in Hursell's home in order to commit a criminal offense therein and that Shepherd inflicted physical harm on Hursell. Shepherd concedes his use of force as well as the physical harm to Hursell that resulted from their physical altercation. Furthermore, the evidence supported the additional elements of the charge because it may be reasonably construed that Shepherd forced his way into Hursell's home and forcibly remained there to continue beating him. Engaging in a physical altercation with another standing in the doorway of a home suggests that such conduct will probably cause the result of entry into the home. The jury obviously rejected Shepherd's claim that Hursell pulled an assailant into his home and restrained him from leaving while being beaten. This conclusion is reasonable and supported by the record. As discussed above, the fact that the force involved was used concurrently to beat Hursell and trespass into Hursell's home does not negate the force

element necessary for aggravated burglary.

{¶ 20} Therefore, Shepherd's aggravated burglary conviction was supported by sufficient evidence and not against the manifest weight of the evidence. Accordingly, his first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED BY DECLINING AN AGGRAVATED-ASSAULT INSTRUCTION.

{¶ 23} Shepherd presents three interrelated arguments in support of his second assignment of error. First, Shepherd claims the trial court erred by adopting the state's argument that self-defense and aggravated assault are mutually incompatible instructions. Second, the trial court erred by confining itself to the defense theory rather than the totality of the evidence to determine if there was sufficient provocation. Third, there was evidence of both objective and subjective provocation to warrant instructing the jury on aggravated assault.

{¶ 24} In addition to the aggravated burglary charge, Shepherd was also charged with felonious assault. At trial, Shepherd requested the trial court to instruct the jury on aggravated assault, an inferior degree offense of felonious assault, and self-defense. The trial court provided the instruction on self-defense, but refused to provide an instruction on aggravated assault. In so refusing, the trial court found there to be no evidence presented of any mitigating factors that would warrant such instruction. Although not explicitly stated, it appears the trial court was of the opinion that instructions on both self-defense and aggravated assault would be incompatible. Specifically, the trial court stated "[i]f there's an instruction to be given, it's self-defense, not sudden fit of rage based upon the evidence."

{¶ 25} An inferior degree offense contains elements identical to or contained within the indicted offense, except for one or more additional mitigating elements. *State v. Deem*, 40

Ohio St.3d 205, 206 (1988), citing R.C. 2945.74; Crim.R. 31[C]. The elements of aggravated assault are identical to the elements of felonious assault, except for the additional mitigating element of serious provocation; therefore, aggravated assault is an inferior degree offense of felonious assault. *Deem* at 206. Pursuant to R.C. 2903.12, one meets the serious provocation element of aggravated assault if they act "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force."

{¶ 26} In deciding whether to give an instruction on an inferior degree offense, the trial court must view the evidence in a light most favorable to the defendant. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 192. An appellate court will reverse a trial court's refusal to give a proposed jury instruction where the trial court abused its discretion and the omission of the instruction was prejudicial to the complaining party. *Enderle v. Zettler*, 12th Dist. Butler No. CA2005-11-484, 2006-Ohio-4326, ¶ 37. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 14. In most cases, an aggravated assault instruction is incompatible with an instruction on self-defense, so that both cannot be given together. *State v. Owens*, 5th Dist. Richland No. 2004-CA-87, 2005-Ohio-4402, ¶ 31, citing *State v. Beaver*, 119 Ohio App.3d 385, 397 (11th Dist.1997). However, "[w]here there is sufficient evidence on the issues of self-defense and aggravated assault, the court must charge the jury on both, when so requested." *Owens* at ¶ 31, citing *State v. Ervin*, 75 Ohio App.3d 275, 279 (8th Dist.1991). For instance, an aggravated assault instruction could be given in a self-defense case where a defendant exceeded the amount of force necessary for his defense, out of passion or rage. *Owens* at ¶ 31.

{¶ 27} As stated above, to warrant an instruction on aggravated assault, the alleged provocation must have been reasonably sufficient to incite sudden passion or rage. *State v. Chambers*, 12th Dist. Butler No. CA2004-03-069, 2005-Ohio-1682, ¶ 9, citing *State v. Mack*, 82 Ohio St.3d 198, 201 (1998). If the defendant meets this objective standard, the analysis will next undertake a subjective inquiry of whether the defendant actually was under the influence of sudden passion or rage. *Chambers* at ¶ 9.

{¶ 28} Shepherd submits there is sufficient evidence of serious provocation to warrant such instruction. Collectively, Hursell's provocative words and his ensuing lunge towards Shepherd were superimposed upon Shepherd's military service-induced PTSD. Shepherd further points to the following specific facts to support his claim: (1) a prior sexual relationship between Rumker and Hursell, (2) Hursell's communication history with Rumker, (3) text messages indicating Rumker's infidelity prior to the assault, (4) Shepherd's peaceful intent when commencing his visit, (5) Hursell's lunge towards Shepherd, and (6) Shepherd's PTSD-induced mental state in reaction to Hursell's sexual advances and violence.

{¶ 29} A review of the record in a light most favorable to Shepherd reveals that the alleged provocation was not sufficient to incite a reasonable person into sudden passion or rage and that Shepherd was not actually acting under the influence of sudden passion or rage when he committed the assault against Hursell. "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and * * * incite or * * * arouse the defendant into using deadly force." *Deem* at 206. "In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Id.* at 211. However, the evidence does not suggest that Shepherd's actions were sudden or that he was seriously provoked to the point of acting in a fit of rage.

{¶ 30} There was evidence at trial of a brief sexual relationship between Rumker and Hursell; however, it was a one-time occurrence two and one-half years before the assault, and one and one-half years before Rumker began her relationship with Shepherd. Further, the past communications exchanged between Hursell and Rumker are insufficient to constitute serious provocation because there was testimony that the two had not communicated for over a month. *See Mack* at 201 ("past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off"). Next, Shepherd cites to text messages of Rumker's infidelity just prior to the assault. However, the text messages admitted at trial do not support this assertion. Rather, these texts convey that Rumker had no plans and wanted to see Hursell to "hang-out." In response, Hursell invited Rumker over to his house followed by a "winky-face" emoji.[2]

{¶ 31} Shepherd further argues that Hursell's violent charge towards him triggered his PTSD-induced reaction created by his prior military service symptomized by rage and impulsivity. Alone, this characterization does not meet the standard for serious provocation, as "a victim's simple pushing or punching does not constitute sufficient provocation to warrant an aggravated assault instruction." *Owens* at ¶ 35. Nevertheless, Shepherd argues that the objective provocation component of the analysis is met because there are words of infidelity coupled with the victim's initial acts of violence. In support of this argument, Shepherd cites an Eleventh District opinion, which found objective provocation where a woman informed her spouse of marital infidelity after engaging in an argument fueled by anger and insults, and attempted to use a knife as a weapon against her spouse as well as hit him in the head with a cast-iron skillet. *State v. Warner*, 11th Dist. Portage No 2006-P-0048, 2007-Ohio-3016, ¶ 61-65, 69 (stating also that "a person suffering from [PTSD] * * * [is] more likely to

---

2. 😉.

emotionally react to stressful provocation").

{¶ 32} First, as stated above, the record is devoid of the words of infidelity between Hursell and Rumker that Shepherd asserts. Specifically, the only indication of this possible evidence is in Rumker's testimony where she states that the "winky-face" means that Hursell wants to sleep with her again. Even viewing this evidence in a light most favorable to Shepherd, it is insufficient to convey words of infidelity and to find otherwise would require us to make an unsupported assumption of the emoji's meaning. Nonetheless, *assuming arguendo* this evidence is sufficient to constitute words of infidelity, Shepherd failed to meet the subjective component of the analysis.

{¶ 33} Shepherd testified that he and Rumker visited Hursell to peacefully confront him in hopes of discontinuing Hursell's unwanted communications to Rumker. Shepherd had no violent intent upon arriving despite the asserted words of infidelity. Shepherd stated that "he had no reason to necessarily be angry" and that he "wasn't irate." Further, he did not testify as to his mental state upon the commencement of the altercation. Rather, upon "Hursell's lunge," Shepherd testified his "fight or flight response kick[ed] in" and that his initial punch was "reactionary." According to Shepherd, he continued to punch Hursell, not because Hursell was attacking him, but because Hursell would not release his jacket. Shepherd's testimony as to his lack of anger is inconsistent with his assertion that he acted of sudden passion or rage. Such testimony and actions do not comport with the concept of serious provocation. Moreover, Shepherd's "fight or flight response" is insufficient to qualify as the kind of emotional state necessary to incite sudden passion or rage. *Mack* at 201.

{¶ 34} We conclude that Shepherd failed to meet the burden of establishing sufficient evidence of provocation to warrant an instruction on aggravated assault. Therefore, the trial court did not abuse its discretion in refusing to give such instruction and Shepherd's second assignment of error is overruled.

{¶ 35} Assignment of Error No. 3:

{¶ 36} TRIAL COUNSEL WAS INEFFECTIVE.

{¶ 37} "To establish a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions." *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17, citing *Strickland* at 694. A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7.

{¶ 38} There is a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14, citing *Strickland* at 690. It is not the appellate court's role to second guess trial counsel's strategic decisions. *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, ¶ 61. "The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel." *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 43, citing *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001).

{¶ 39} The PTSD evidence, as reflected by the presentence investigation report ("PSI") and a VA report, was that Shepherd received treatment for PTSD, the symptoms of which were manifested in anger and impulsivity. Shepherd argues that his trial counsel was ineffective for not eliciting the PTSD evidence during trial because it would have been

admissible to substantially advance his theories of self-defense and provocation and would have changed the focus during trial from Hursell's injuries to Shepherd's mental illness. Shepherd claims he was prejudiced by this failure because there was a reasonable probability that the jury would have found self-defense or provocation with the PTSD evidence.

{¶ 40} The decision to not elicit the PTSD evidence can be viewed as a strategy choice made by trial counsel, and therefore, carries a strong presumption of adequacy. As Shepherd asserts, there is case law that suggests an attorney's trial decision to not elicit such evidence falls below an objective standard of reasonableness. *See Reddy v. Kelly*, 657 F.Appx. 531, 543 (6th Cir.2016). However, the facts in *Reddy* are dissimilar to the facts in this case. In *Reddy*, the Sixth Circuit found a trial counsel's failure to elicit PTSD evidence ineffective where trial counsel's *entire trial strategy* was to adduce testimony that the defendant was under the influence of sudden passion or fit of rage when he killed his mother and that there was a nexus between the defendant's mental illness, his history of abuse specific to his mother, and his homicidal behavior. *Id.*

{¶ 41} The PTSD evidence in this case does not provide the nexus in *Reddy* that would link Shepherd's alleged sudden passion or fit of rage to the altercation with Hursell. Further, a disposition to rage and impulsivity does not justify the use of excessive force to repel a threat in self-defense, which is precisely what was argued by Shepherd when requesting a jury instruction on both self-defense and aggravated assault. Rather, one may rationally infer that trial counsel chose to not elicit the PTSD evidence to maintain the main defense theory of self-defense that Shepherd intended to act in a reasonable manner by carrying on an honest conversation with Hursell, and that it was only upon Hursell's initial aggression, not Shepherd's predisposition to anger and impulsivity, that resulted in the degree of force used by Shepherd.

{¶ 42} Shepherd testified that he specifically chose Halloween to talk to Hursell to avoid confrontation because there would be kids present and he wanted to avoid any violence. He testified that he does not have a lot of anger, that he was not irate about any communication issues between Rumker and Hursell, and that he hoped to solve such issues by informing Hursell that Hursell's unwanted communication was harmful and that they would like to be left alone. Shepherd further testified that he attempted to partake in a conversation with Hursell until Hursell lunged at him; thereby, beginning the altercation that required Shepherd to defend himself.

{¶ 43} The fact that Shepherd has a general disposition towards rage and impulsivity tends to undermine this theory of reasonable action undertaken by Shepherd; thereby, discrediting trial counsel's avenue for proving self-defense. The record demonstrates that provocation was an alternative theory to the main defense theory of self-defense. It is not unreasonable to refrain from eliciting evidence that tends to contradict the main defense theory to support an alternative theory. Particularly, as discussed above, when such evidence is devoid of the necessary components of its application to that alternative theory. Therefore, trial counsel's strategy to not elicit PTSD-related evidence was not deficient.

{¶ 44} Accordingly, Shepherd's third assignment of error is overruled.

{¶ 45} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.