[Cite as *State v. Inabnitt*, 2022-Ohio-53.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-02-013 |
| | : | O P I N I O N |
| - vs - | | 1/10/2022 |
| | : | |
| CARL NICHOLAS INABNITT, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR36283

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Fox Scott Law, and Bradley W. Fox, for appellant.

**BYRNE, J.**

{¶1}  Carl Nicholas Inabnitt appeals from his conviction in the Warren County Court of Common Pleas for felonious assault.  For the reasons detailed below, we affirm the conviction.

**I. Factual and Procedural Background**

{¶2}  In January 2020, a Warren County grand jury indicted Inabnitt on one count

of felonious assault. The indictment stemmed from allegations that Inabnitt threw the victim down a staircase, which caused the victim to suffer a traumatic brain injury. Inabnitt waived a jury trial and the matter proceeded to a bench trial.

{¶3} Brandon Doughman testified that Inabnitt was his maternal uncle. Inabnitt was married to Brandon's aunt, Julie Inabnitt. The Inabnitts lived at 9961 Gustin Rider Road in Warren County. In March 2019, the Inabnitts' home was destroyed in a fire.

{¶4} Brandon testified that he worked in the residential construction and remodeling business and that he worked with his father, Seth Doughman. Following the loss of the Inabnitts' home, Brandon said that Julie asked him if he would build the Inabnitts' new home on the same property.

{¶5} Brandon agreed, and he and the Inabnitts entered into a contract to begin building the home in July 2019, with a finishing date of January 1, 2020. Brandon wanted Seth to assist him in the build because this would be Brandon's first home construction where Brandon was the general contractor. While the home was being built, the Inabnitts lived in a hotel paid for by their insurance company.

{¶6} Brandon testified to two incidents that occurred during the build. In the first incident, Inabnitt had been frustrated with the time it took to dig a temporary pool on the property, so he called Brandon on the phone and cursed and yelled at him. In the second incident, Brandon met with Inabnitt to pick various materials for the new home, such as siding, trim, and door styles. Brandon said that Inabnitt became frustrated with all the decisions that came with building a home. He poked Brandon in the chest and told him that he (meaning Brandon), "needed to figure this shit out."

{¶7} Brandon said that in early November 2019, Inabnitt informed him that the insurance company was going to stop paying for the Inabnitts' hotel costs beginning December 2019. Inabnitt told Brandon that he would need to finish building the home as

quickly as possible. However, Brandon said that finishing the home by December was not feasible.

{¶8} On November 25, 2019, Brandon arrived at the job site around 8:00 a.m. He and Seth were working inside the new home and were the only people working at the home that morning. When he arrived, he found that the Inabnitts' two German Shepherds had been inside the home and had tracked mud throughout, including on newly painted surfaces. The problem was compounded because it had been especially rainy that season and the grounds around the build site were very muddy.

{¶9} Brandon explained that Inabnitts' German Shepherds lived on the property during the build and that Inabnitt was on the job site every day to let the dogs out of a camper or pole barn where they stayed. Brandon explained that Inabnitt let the dogs roam freely around the property, including in the new home. This practice had not been a problem during earlier, rougher stages of construction, because the build site would already be dirty from construction activities.

{¶10} In addition to the mud, Brandon observed that the power cord to the sump pump had been disconnected. This had caused water to come to the top of the sump crock and begin to flood the basement floor. Brandon assumed that the dogs had run by the pump and unplugged it.

{¶11} At around 9:00 a.m. that morning, Brandon texted the Inabnitts:

> Dogs are tracking in way too much mud. Tracking mud on finished paint surfaces. They also pulled the wires out of the plug in basement so sump pump wasn't plugged in so now water is coming in basement. I need the dogs to stay out.

{¶12} Inabnitt quickly responded without addressing Brandon's concerns. He wrote, "How long is this going to take we are being moved out this weekend. We need a place to stay." Brandon replied, "Still on schedule for contract date of Jan 1st. Hoping before

Christmas."

{¶13} Approximately one hour after Brandon sent Inabnitt the text, he saw Inabnitt's truck "flying down" the driveway to the new home. Inabnitt entered the home, throwing the door open and walking in very fast. According to Brandon, Inabnitt was "very angry," yelling loudly, cursing, and had a flushed face.

{¶14} Inabnitt began asking Brandon what the issue was with the dogs. Inabnitt told Brandon that this was his house, and the dogs were going to stay in it. He kept reiterating that "this was his house." He announced a list of demands, including that Brandon install a toilet.

{¶15} Brandon said that due to Inabnitt's demeanor, he just tried to be as "agreeable as possible," saying "okay" and nodding his head while Inabnitt ranted. Seth did not say anything. Brandon explained that he was trying to diffuse the situation and just let Inabnitt say whatever he wanted to say.

{¶16} Inabnitt then demanded that they go look at the sump pump. Inabnitt, Brandon, and Seth, in that order, all began walking towards the staircase to the basement. Brandon testified that he was about an arms-length behind Inabnitt as they walked towards the staircase. Inabnitt took one step down the staircase when Brandon began to make a comment about why he thought the dogs had caused the issue with the sump pump.

{¶17} However, before Brandon could complete his sentence, Inabnitt turned around, grabbed Brandon's shirt in the chest, and shoved him. The shove caused Brandon to stagger backwards. When Inabnitt pushed Brandon, he stepped back up to the main floor.

{¶18} Brandon testified that Seth then moved in between he and Inabnitt, raising him arms out to keep them separated. Brandon said that Seth did not make any aggressive moves towards Inabnitt.

- 4 -

{¶19} Brandon testified that Inabnitt then grabbed Seth underneath his right shoulder, "and in a body slamming, tossing motion," threw Seth down the staircase, with Inabnitt falling down the stairs with him. Seth landed at the bottom of the staircase, on his back, face up. Inabnitt was on top of Seth, "still wrestling" or "rustling."

{¶20} Brandon ran down the staircase and grabbed Inabnitt by the waist, trying to pull him off Seth. Inabnitt resisted and tried to shake Brandon off, moving side to side, and throwing elbows backward. Brandon then put Inabnitt in a choke hold. He started to squeeze and asked Inabnitt if he was done. He asked him several times before Inabnitt finally said, "I'm done" and got off Seth.

{¶21} Brandon had not been able to see his father until Inabnitt got up. At that point, he observed that Seth was shaking, his eyes were in the back of his head, his tongue was sticking out of his mouth, and he was breathing heavily. Seth was unconscious and there was blood coming from his ear. Brandon told Inabnitt to call 9-1-1, which Inabnitt did immediately.

{¶22} The state introduced the 9-1-1 calls into evidence.[1] In the first 9-1-1 call, Inabnitt, sounding extremely distressed, told the dispatcher that "this guy and I got in an argument, he grabbed me, we were on the steps, and I just grabbed him and took him down and he hit his head." While on the call, Inabnitt is heard repeatedly apologizing to Brandon, saying that he was "so sorry" and that it was "my fault." Inabnitt lamented that "I did not want this to happen." When asked again to describe what occurred, Inabnitt stated that "the guy grabbed me, we fell down the steps."

{¶23} In the second 9-1-1 call, Inabnitt now described the incident as, "Brandon pushed me. I pushed him and his dad grabbed me. I grabbed him and we fell down the

---

1. There were two 9-1-1 calls. The line became disconnected at some point and Inabnitt called 9-1-1 a second time.

steps and he hit his head." Inabnitt is overheard stating, "I'm so sorry. I'll pay for everything."

{¶24} The state introduced video and audio recordings taken from the vehicle and body microphone of a Warren County Sheriff's deputy who responded to the scene. After arriving on scene, the deputy placed Inabnitt in the back seat of his cruiser. While sitting there, Inabnitt observed Brandon being led past the cruiser in handcuffs.[2] Inabnitt yelled to the deputies, "he doesn't need to be arrested! * * * he did not do it!"

{¶25} When asked by a deputy what happened, Inabnitt stated, "I got punched, jumped, and stuff." He said that he did not want to press charges, but that "I know they do." Inabnitt stated that he was a high school principal and complained that he was going to lose his job.

{¶26} When later asked to describe what occurred, Inabnitt stated that "we were at the top of the stairs, and I turned around, Brandon shoved me and I shoved him, and then his dad grabbed me, then I grabbed his dad and we fell down the steps and I landed on top of him." He stated that there were no punches thrown by either him or Seth, and it was just "him grabbing me and me grabbing him." He said that his only defense was that "they grabbed me first." Inabnitt also described saying, "I'm done."

{¶27} Brandon testified that Seth suffered a traumatic brain injury and was hospitalized for fifteen days. Medical records introduced into evidence indicated Seth suffered a subdural hematoma and a traumatic subarachnoid hemorrhage. Brandon stated that Seth had no memory of that day and that he suffered both temporary and permanent effects of the trauma, including significant memory issues, an inability to taste or smell, and shoulder and back pain. Additionally, he is now physically unable to lift anything, thus

---

2. The responding Sheriff's deputies temporarily detained Brandon for questioning.

constraining his work in home construction.

{¶28} At the conclusion of the state's case, Inabnitt moved for acquittal under Crim.R. 29. The trial court denied the motion. Inabnitt rested his defense case without presenting testimony.[3] The trial court found Inabnitt guilty and sentenced him to three years of community control. Inabnitt appealed, raising four assignments of error. We address the first three assignments of error collectively.

## II. Law and Analysis – Evidentiary Claims

{¶29} Assignment of Error No. 1:

{¶30} THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S R. 29 MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE IN CHIEF.

{¶31} Assignment of Error No. 2:

{¶32} THE TRIAL COURT ERRED WHEN THE JURY [sic] ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO FIND APPELLANT GUILTY.

{¶33} Assignment of Error No. 3:

{¶34} THE TRIAL COURT ERRED WHEN THE JURY [sic] ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶35} In support of his first assignment of error, Inabnitt argues that the state did not provide sufficient evidence to prove that he "knowingly" caused Seth serious physical harm. In support of his second and third assignments of error, Inabnitt contends that the state presented legally insufficient evidence and that the trial court lost its way in convicting him because the evidence established that Seth's injuries were the result of an accident.

---

3. Inabnitt did introduce into evidence a certified copy of medical records from an office visit he had immediately prior to the incident.

**A. Standard of Review**

{¶36} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5; *State v. Huston*, 12th Dist. Fayette Nos. CA2006-05-021 and CA2006-06-022, 2007-Ohio-4118, ¶ 5.

{¶37} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶38} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State*

*v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{**¶39**} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 15.

### B. Whether Inabnitt Acted Knowingly

{**¶40**} The trial court convicted Inabnitt of felonious assault, which provides in relevant part that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." R.C. 2903.11(A)(1). A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B).

{**¶41**} Inabnitt argues that the state failed to show that he acted knowingly because the evidence was that he simply grabbed Seth to avoid falling down the staircase and that what occurred was an accident. He argues that this interpretation of the evidence is bolstered because he fell down the staircase with Seth. He explains that he would not have placed himself at risk if he knowingly intended to cause serious physical harm to Seth by throwing him down the staircase.

{**¶42**} We do not share Inabnitt's interpretation of the evidence. The evidence submitted through Brandon's testimony was that Inabnitt came into the home "very angry," cursing and yelling. He ranted about the home, made demands, and then demanded that he be shown the sump pump. As they were heading downstairs, Brandon's comment about the dogs apparently caused Inabnitt to lose total control of his emotions and resulted in him

physically attacking Brandon. Then, when Seth inserted himself in between the two, Inabnitt locked Seth under the shoulder, threw him down the staircase, and fell down the staircase with him. Inabnitt would have been aware that his conduct of throwing Seth down the stairs would probably cause Seth serious physical harm.

{¶43} The evidence of what occurred after the throw also supports the conclusion that Inabnitt acted knowingly. Even after throwing Seth down the staircase and landing on top of him, Inabnitt persisted in "wrestling" or "rustling" on top of Seth. Furthermore, he resisted Brandon's attempts to pry him off Seth by throwing elbows and twisting his body. Ultimately, Brandon had to place Inabnitt in a choke hold. Inabnitt's aggressive behavior after the throw belies his claim that the evidence demonstrated an accidental fall.

{¶44} The fact that Inabnitt also fell down the stairs is not significant in terms of negating Inabnitt's mental state. The evidence would support the conclusion that either Seth held on to Inabnitt or that Inabnitt held on to Seth as Seth was thrown down the staircase. Inabnitt's initial statement to the 9-1-1 dispatcher was that he "took him down." This statement implies that Inabnitt was the aggressor and that he was aware that his conduct would probably cause serious physical harm.

**C. Self-Defense**

{¶45} Alternatively with respect to his sufficiency argument, Inabnitt argues that the evidence could be viewed as him "acting in a mode of self-defense." However, "[s]elf-defense is an affirmative defense and as such is not considered in a sufficiency of the evidence analysis." *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 28. Regardless, the evidence submitted would also not support a claim of self-defense. There was no evidence presented that Brandon or Seth ever acted aggressively towards Inabnitt. Nor was there any evidence that Inabnitt felt threatened by any actions of Brandon or Seth.

**D. Accident**

{¶46} Finally, in his manifest weight argument, Inabnitt contends that the trial court lost its way because the greater weight of the evidence established that what occurred was an accident. However, to find that Seth's injuries were accidental, the trial court would have had to reject Brandon's testimony outright in favor of Inabnitt's claim, through his recorded statements, that he and Seth simply fell down the stairs after grabbing one another.

{¶47} The trial court found Brandon's version of events credible and we defer to the trial court's credibility determinations. *State v. Statzer*, 12th Dist. Butler No. CA2015-08-148, 2016-Ohio-7434, ¶ 25. Moreover, it is clear from a review of the record that Brandon's description of what occurred was consistent. But Inabnitt's version of events, as repeated several times shortly after the incident, was not.

{¶48} Inabnitt's account of what occurred between he and Seth shifted as time went on. It began with the more inculpatory statement that he "took him down." Subsequently, Inabnitt's version of the event became, "this guy grabbed me, we fell down the steps." Inabnitt also contradicted himself within a short time, initially claiming that he got "jumped" and "punched" but then later stating that no punches were thrown. Finally, Inabnitt corroborated Brandon's claim that he had to place him in a choke hold before he would get off Seth. That is, Inabnitt admitted stating, "I'm done." He would not need to state "I'm done" if he was not, prior to that time, engaged in aggressive behavior. After a thorough review of the record, we find that Inabnitt's conviction was supported by sufficient evidence and by the manifest weight of the evidence. We overrule Inabnitt' s first, second, and third assignments of error.

**III. Law and Analysis – Ineffective Assistance of Counsel Claims**

{¶49} Assignment of Error No. 4:

{¶50} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN THAT COUNSEL'S REPRESENTATION WAS PROFESSIONALLY UNREASONABLE, IS PREJUDICIAL TO APPELLANT, AND FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS.

{¶51} Inabnitt alleges that he received constitutionally deficient assistance of counsel.  He presents six alleged instances of ineffective assistance.

**A. Standard of Review**

{¶52}  To prevail on an ineffective assistance of counsel claim, Inabnitt must show his defense counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984).  Defense counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688.  To show prejudice, Inabnitt must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different.  *Id.* at 694.  The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim.  *Clarke* at ¶ 49.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Strickland* at 689.

**B. Analysis of Ineffective Assistance Claims**

**1. Self-Defense**

{¶53}  Inabnitt first argues that his counsel was ineffective for failing to present a defense case based on a self-defense theory.  Inabnitt contends that if the issue of self-

defense had been raised, the state could not have proven beyond a reasonable doubt that he did not act in self-defense.

{¶54} First, the decision to raise any given defense falls squarely within defense counsel's latitude in choosing a trial strategy. *State v. Cobb*, 12th Dist. Butler No. CA2007-06-153, 2008-Ohio-5210, ¶ 53. Second, even if we questioned counsel's choice of defense, which we do not, we would not find that counsel's decision not to pursue self-defense constituted deficient performance. Defense counsel chose to pursue the defense of accident. Where an accident theory is raised, the decision not to pursue a self-defense theory is reasonable because the two defenses are inconsistent. *State v. Rigdon*, 12th Dist. Warren No. CA2006-05-064, 2007-Ohio-2843, ¶ 47. "'Self-defense presumes intentional, willful use of force to repel force or escape force. Accidental force * * * is exactly the contrary, wholly unintentional and unwillful.'" *State v. Barnd*, 85 Ohio App.3d 254, 260 (3d Dist.1993) quoting *State v. Champion*, 109 Ohio St. 281, 286-287 (1924).

{¶55} Moreover, defense counsel likely determined not to pursue a self-defense theory simply because it was not supported by Inabnitt's recorded statements. The elements of self-defense are (1) that the defendant was not at fault in creating the situation, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid danger. *State v. Sturgill*, 12th Dist. Clermont No. CA2020-03-018, 2020-Ohio-6665, ¶ 20, *citing State v. Ray*, 12th Dist. Butler No. CA2012-10-213, 2013-Ohio-3671, ¶ 26, and *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). Inabnitt repeatedly stated that what happened was his fault. Moreover, he never made any statements that any actions by Brandon or Seth caused him to feel threatened or fearful. Instead, Inabnitt's version of events was of a mutual combat scenario where the fall was simply an accidental result of a pushing and shoving match near a

staircase. We do not find that Inabnitt has demonstrated deficient performance based on a failure to present a self-defense case.

## 2. Failure to Request Inferior Offense

{¶56} Inabnitt contends that his counsel was deficient for failing to request that the court consider a conviction for aggravated assault, as an inferior offense of felonious assault. "An inferior degree offense contains elements identical to or contained within the indicted offense, except for one or more additional mitigating elements." *State v. Shepherd*, 12th Dist. Butler No. CA2015-11-187, 2017-Ohio-328, ¶ 25, citing *State v. Deem*, 40 Ohio St.3d 205, 206 (1988). "The elements of aggravated assault are identical to the elements of felonious assault, except for the additional mitigating element of serious provocation; therefore, aggravated assault is an inferior degree offense of felonious assault." *Id.*

{¶57} As previously explained, the felonious assault statute provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." R.C. 2903.11(A)(1). The aggravated assault statute also states that "[n]o person * * * shall knowingly * * * [c]ause serious physical harm to another * * *," but with an additional serious provocation element. R.C. 2903.12(A)(1). Pursuant to R.C. 2903.12(A)(1), one meets the serious provocation element of aggravated assault if they act "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * *."

{¶58} "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *Deem*, paragraph five of the syllabus. "In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions

and circumstances that surrounded him at the time." *Id.* Provocation must be occasioned by the victim. *State v. Shane*, 63 Ohio St.3d 630, 637 (1992).

{¶59} We find that Inabnitt's trial counsel was not deficient for failing to request the trial court consider an aggravated assault conviction. This is because there was no evidence that Seth, the victim, provoked Inabnitt. The only evidence potentially evidencing a "provocation" was Brandon's text message and his later comment about the dogs.[4] But there was no evidence that *Seth* said anything or did anything to provoke Inabnitt. Seth merely intervened to deescalate the situation by moving between Inabnitt and Brandon and stretching out his arm to keep them separated after Inabnitt grabbed Brandon's shirt and shoved him backwards. Even if one accepted Inabnitt's version of events, at worst, Seth grabbed Inabnitt. But a grab could not reasonably provoke Inabnitt into using deadly force. Accordingly, the evidence in this case would not have supported an aggravated assault conviction and defense counsel was not deficient for failing to request that the trial court consider a conviction for aggravated assault.

### 3. Failure to Employ Expert Witness

{¶60} Inabnitt argues that his trial counsel was deficient for not retaining an expert witness who could have opined about the nature of the fall down the staircase, which, Inabnitt claims, would have "clarified how the fall occurred, how the injuries were sustained, and how this fall was an accident."

{¶61} However, "the decision whether or not to call an expert witness is solely a matter of trial strategy." *State v. Cantwell,* 12th Dist. Clermont No. CA97-02-018, 1997 WL 727648, at *1 (Nov. 24, 1997), citing *State v. Coleman*, 45 Ohio St.3d 298, 307-08 (1989). "A decision by defense counsel not to call an expert witness generally will not sustain an

---

4. Hypothetically speaking, that is. We do not mean to suggest that Brandon actually provoked Inabnitt.

ineffective assistance of counsel claim." *Id.* citing *State v. Nicholas*, 66 Ohio St.3d 431 (1993); *State v. Thompson*, 33 Ohio St.3d 1, 10-11 (1987).

{¶62} Additionally, Inabnitt's claim that his defense counsel could have found an expert to testify that Seth's injuries were accidental is entirely speculative. "Nothing in the record indicates what kind of testimony an * * * expert could have provided. Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal." *State v. Madrigal*, 87 Ohio St.3d 378, 390-391 (2000). The decision not to call an expert witness in this case was within the ambit of trial strategy and does not constitute ineffective assistance of counsel.

### 4. Statements Blaming Inabnitt for the Incident

{¶63} Inabnitt next contends that his defense counsel was deficient and prejudiced him because in multiple instances during the trial, counsel made statements indicating that if Inabnitt had not pushed Brandon, "none of this would have happened." Inabnitt argues that this concession negated his ability to argue either self-defense or provocation.

{¶64} Upon review, the comments by defense counsel were not admissions of guilt and did not prevent Inabnitt from setting forth his strongest defense. Inabnitt is heard on the 9-1-1 calls repeatedly apologizing and stating this it was his fault. Counsel's comments were designed to square Inabnitt's statements with the defense theory of accident. This was a trial strategy in which Inabnitt acknowledged that he was at fault for grabbing or shoving Brandon (after, he claimed, Brandon first grabbed or shoved him), but that he could not have foreseen that his grabbing Brandon would have set off an accidental series of events resulting in Seth suffering serious physical harm. Counsel's comments were tactical, consistent with the defense theory of accident, and Inabnitt has not demonstrated deficient performance. *State v. Wu*, 12th Dist. Butler No. CA96-08-161, 1997 WL 277181, *4 (May

27, 1997) ("The presentation of an opening and a closing argument involves trial strategy, and a reviewing court reviews counsel's presentation with a strong presumption that counsel's conduct falls within the wide range of professional assistance.").

### 5. Clear Defense

{¶65}   Inabnitt contends that his defense counsel failed to present a clear defense. We disagree.   As described, defense counsel presented a defense case premised on accident.   The defense was an effort to present Inabnitt in the best light given his recorded statements.   Simply because the trial court did not accept the defense does not establish that counsel was deficient in presenting Inabnitt's case.   *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 43, citing *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001) ("The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel.").

### 6. Failure to Call Inabnitt to Testify

{¶66}   Finally, Inabnitt argues that defense counsel prejudiced him by not calling him to testify.   He argues that had he testified he would have been able to explain his recorded statements and that testifying was the only way he could present alternative defenses, such as self-defense.   Inabnitt claims that if he had testified there would have been a different outcome at trial.

{¶67}   "The decision whether or not to call appellant as a witness, however, clearly falls within the purview of trial tactics."   *State v. Vires*, 12th Dist. Clinton No. 88-02-003, 1988 WL 92646, *4 (Sept. 6, 1988).   And there is nothing in the record that would suggest that the decision not to call Inabnitt as a witness was anything other than sound trial tactics.

{¶68}   Additionally, Inabnitt's claim of a changed outcome had he testified is entirely speculative.   There is nothing in the record to show what Inabnitt's testimony would have

been and thus there is no way for us to determine that he was prejudiced by defense counsel's failure to call him. *See State v. Listo*, 12th Dist. Clermont No. CA2010-02-016, 2010-Ohio-4408, ¶ 24. We overrule Inabnitt's fourth assignment of error.

### IV. Conclusion

{¶69} For the foregoing reasons, we find that Inabnitt's conviction was supported by the evidence and that Inabnitt did not receive ineffective assistance of counsel. We overrule all four of Inabnitt's assignments of error.

{¶70} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.